IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | |
| JAMES ARTHUR OVERBY and PATRICIA ) | |
| RAYE OVERBY, ) | Case No. 10-20602-drd13 |
| ) | |
| Debtors. ) | |

## MEMORANDUM OPINION

The matter before the Court in this case is the Trustee's Motion to Deny Confirmation of the Debtors' proposed Chapter 13 Plan. The issue is whether unemployment compensation received by one of the Debtors is a benefit received under the Social Security Act and therefore excluded from current monthly income. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). It is a core proceeding which this Court may hear and determine and in which it may issue a final order pursuant to 28 U.S.C. § 157(b)(2)(L). This opinion contains the Court's Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rules 9014(c) and 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth herein, the Court finds that unemployment compensation is not a benefit received under the Social Security Act and must therefore be included in the calculation of Debtors' current monthly income.

## I. FACTUAL BACKGROUND

Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code on March 25, 2010, and filed their Chapter 13 plan on that date. The plan proposes to pay to the trustee the sum of $186.00 per month for a period of 36 months. According to the trustee, based on the other claims being paid pursuant to the plan, nonpriority unsecured creditors will receive approximately 5.1% of the allowed amount of their claims. Form 22C filed by the Debtors shows monthly income of

$4,773.33 which when annualized equals $57,279.96, just under the median income in the state of Missouri for a family of three of $60,156.00. Debtors have excluded the sum of $345.00 received each month as unemployment compensation during the six-month period prior to the filing. Although it is disclosed on line 8 of Form 22C, it is not included in either column A or column B and thus not in the income totals. Inclusion of that amount would put the Debtors above the median income threshhold and would make the applicable commitment period five years rather than the 36 months which is the present duration of the plan.

The trustee contends the plan violates § 1325(b) because it does not pay the Debtors' unsecured creditors in full and would expire prior to the applicable commitment period. Integral to the trustee's argument is his contention that the unemployment compensation should be included in current monthly income. If it is, the Debtors are above median and the applicable commitment period is five years, not the 36 months now specified in the plan. Debtors contend they have properly excluded the unemployment compensation as it is a benefit received under the Social Security Act and therefore excluded from the definition pursuant to § 101(10A)(B).

## II. DISCUSSION

Pursuant to § 1325(b), upon objection by the trustee, the court may not confirm a Chapter 13 plan if the claims of unsecured creditors are not being paid in full unless the plan proposes to commit all the debtors' projected disposable income received in the applicable commitment period to make payments to unsecured creditors under the plan. The applicable commitment period, pursuant to § 1325(b)(4)(A), is five years if the debtors' current monthly income when multiplied by 12, is equal to or greater than the median family income of the state for a family of the same household size. Current monthly income is now a defined phrase that generally requires

2

consideration of all income received by the debtors during the six-month period prior to the date of the filing of the petition with certain identified exceptions. One such exception is "benefits received under the Social Security Act." § 101(10A)(B). The issue before the Court is whether unemployment compensation is a benefit received under the Social Security Act. The issue arises because there is some relationship between state unemployment compensation programs and certain provisions of the Social Security Act which involve the federal government.

As with so many other issues involving amendments made by the Code to the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA), the courts are divided on the question. Earlier decisions, including *In re Sorrell*, 359 B.R. 167 (Bankr. S.D. Ohio 2007) and *In re Munger*, 370 B.R. 21 (Bankr. D. Mass. 2007), both decided in a Chapter 7 context, held that unemployment compensation is a benefit received under the Social Security Act and therefore excluded from the definition. Those courts relied on the fact that if states create such programs they must comply with certain federal mandates, compliance with which must be certified by the Secretary of Labor and that administrative costs of the programs are paid by federal grants. In addition, the *Sorrell* court employed a textual analysis of the reference to benefits under the Social Security Act contained in the definition of current monthly income and references to the Social Security Act in certain other places of the Code, which are to specific provisions of the Act. Based on that, the court concluded that the definitional reference was intended to be broader and more general, re-enforcing its conclusion that the exclusion includes things beyond those items traditionally regarded as social security benefits. The more recent cases, including another decided under Chapter 7, *In re Winkles*, 2010 WL 2680895 (Bankr. S.D. Ill. 2010), and four others decided in a Chapter 13 context, *In re Baden*, 396 B.R. 617 (Bankr. M.D. Pa. 2008), *In re Kucharz*, 418 B.R. 635 (Bankr. C.D. Ill. 2009),

3

*In re Nance*, 2010 WL 2079653 (Bankr. S.D. Ind.) and *In re Rose*, 2010 WL 2600591 (Bankr. N.D. Ga. 2010) have all come to the conclusion that unemployment benefits are not benefits received under the Social Security Act and therefore must be included in the calculation of current monthly income. The commentators are likewise split. *Contrast* E. Wedoff, *Means Testing and the New § 707(b)*, 79 Am. Bank. L.J. 231, 247, (Spring 2005) (categorizing unemployment compensation as benefit under Social Security Act would be a "strained interpretation"); *with* 2 Allen N. Resnick & Henry J. Sommer, *Collier on Bankruptcy,* § 101-10A, (15th ed. 2010) (unemployment benefits are provided for in Social Security Act and should be excluded from calculation of CMI under the means test). For the reasons cited below, this Court finds the reasoning of these recent cases more persuasive and joins this line of authority.

In interpreting the statute, the Court must of course start with its language and end there if its meaning is plain. As courts on both sides of the issue have employed this maxim and yet reached different results, the Court does not find it particularly helpful. The key to deciding whether these benefits should be included would seem to be the meaning of the word "under." Consequently, some courts have consulted dictionary definitions of that term and found justification for their holdings. *See, e.g., Kucharz*, 418 B.R. at 641. However, this Court does not find that helpful, in part because the word is subject to multiple definitions and meanings, some of which might justify a different result. *See Webster's New College Dictionary* 1556 (2005) (listing 13 definitions for the prepositional use of the word "under").

Those courts that have held the benefits to be sufficiently linked to the Social Security Act to warrant excluding them from the definition of current monthly income have pointed out that state programs must comply with certain federal mandates and compliance must be certified by the

4

Secretary of Labor. It is also true, however, as other courts have pointed out, that the states need not establish programs to begin with. Congress eschewed a uniform nationwide approach to providing unemployment compensation. The states administer these programs and pay the benefits from their own funds, processing and adjudicating claims for benefits. *See Kucharz*, 418 B.R. at 638, 639 ("states were given a wide range of judgment and broad freedom to set up the type of unemployment compensation system they prefer . . . claims are submitted to, evaluated and paid or denied through state officials implementing state law"); *In re Winkles*, 2010 WL 2680895 at *3. Although the states receive funds from the federal government to defer the cost of administering the programs, the benefits are paid by the states. In addition, some of the funding mechanisms (particularly as to extended benefits) are created pursuant to legislation other than the Social Security Act, such as the Federal Unemployment Tax Act and the Federal-State Extended Unemployment Compensation Act. *Kucharz*, 418 B.R. 635 at 638.

As noted by the court in *Sorrell*, the Supreme Court once commented that one purpose of the Social Security Act was to provide partial replacement of wages to the unemployed. However, given the whole structure of the program, this does not provide compelling evidence for drawing the conclusion that these benefits are benefits received under the Social Security Act. As the court in *Kucharz* noted, the Supreme Court also recognized, in the process of defending the Social Security Act from constitutional challenge in the case of *Charles C. Steward Machinery Company v. Davis*, 301 U.S. 548 (1937), that the taxes from which unemployment benefits are paid are collected pursuant to laws enacted by the states and that the benefits are paid under programs administered by state officials. *Kucharz*, 418 B.R. at 639.

Textual analysis also provides at least as much support for the proposition that

unemployment compensation benefits are not benefits received under the Social Security Act as for the contrary position. The Court in *Sorrell* noted that in § 101(10A), Congress referred broadly to benefits received under the Social Security Act, whereas in other places in the Bankruptcy Code, when referring to the Social Security Act, Congress cited specific sections of the Act. From this, the court inferred that the reference in § 101(10A) was intended to be broader. The opposite inference, however, can also be drawn from the way in which unemployment compensation benefits and Social Security benefits are referred to in one other section of the Code. In § 522(d)(10)(A), Congress provides an exemption for both "a social security benefit" and "unemployment compensation," suggesting the two are not one and the same. *See Baden*, 396 B.R. at 621; *Winkles*, 2010 WL 2680895 at *4.

A contextual analysis also supports the conclusion that unemployment compensation is not a benefit received under the Social Security Act. Unemployment compensation benefits are intended to provide a temporary substitute for lost wages. In that regard, they are unlike the more traditional Social Security benefits provided on retirement and unlike the other exclusions contained in § 101(10A)(B) such as payments to victims of war crimes or domestic terrorism. None of these other benefits involve such temporary situations. *Kucharz*, 418 B.R. at 642. Thus, construing the phrase consistently with the immediate context suggests unemployment compensation benefits not be regarded as benefits received under the Social Security Act. Construing the phrase in a broader context, consistent with the nature of other BAPCPA changes relating to contributions to retirement plans and repayment of loans from such plans, reinforces that conclusion. In those changes, Congress protected retirement plans (by excluding contributions to such plans from property of the estate in § 541(b)(7)) as well as repayment of loans from retirement plans (in protecting repayment

6

of loans by excepting withholding from the automatic stay in § 362(b)(19) and excluding such amounts from disposable income in § 1322(f)). These changes suggest that Congress likely had in mind in this exclusion the traditional types of retirement benefits provided by the Social Security Act. *Rose*, 2010 WL 2600591 at *1, n. 3.

Considerations of policy also weigh in favor of the inclusion of unemployment compensation in the calculation of current monthly income. As numerous courts have noted, one apparent policy of BAPCPA was to require debtors who can afford to make payments to their creditors to pay as much as possible. On the other hand, (as noted above) in numerous places Congress included provisions designed to protect Social Security benefits and retirement plans. Including unemployment compensation in the calculation of current monthly income to determine what debtors must pay to unsecured creditors is consistent with the former objective and does not contravene the latter policy. *Baden*, 396 B.R. at 622. Current monthly income is designed to be a predictor of the Debtors' ability to generate income over the course of the Chapter 13 plan. Since unemployment compensation is designed to provide a temporary substitute for income that would likely be replaced by employment gained over the course of the plan, excluding it would tend to understate the debtor's likely available income. Since these benefits are significantly different from those provided by retirement plans, contributions to which and repayment of the loans from which are protected by other provisions of the Code, including them in the calculation of current monthly income would not contravene the policy of protecting those more traditional benefits.

Finally, an interpretation which excludes unemployment compensation from the definition of current monthly income would be inconsistent with another recognized principle of statutory construction. As the court in *Baden* noted, prior to BAPCPA, all sources of income had been

7

included in determining debtors' projected disposable income, including unemployment compensation. *Baden*, 396 B.R. at 623. Accordingly, the pre-BAPCPA practice was to include such income. A general rule of statutory construction provides that the Court should not assume Congress intended a deviation from established practice unless the statute effects such a change with specificity. *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494 (1986). The court therefore has a right to assume that if Congress intended to exclude unemployment compensation from the definition of current monthly income it would have said so with greater clarity.

For all of these reasons, the Court finds that unemployment compensation is not a benefit received under the Social Security Act and should not be excluded from the definition of current monthly income. If the amounts received by the Debtors during the six-month period prior to the filing of the petition are included in the CMI calculation, the Debtors are above the median income for a family of similar household size in the state of Missouri. Therefore, the applicable commitment period is five years. To the extent that the Debtors' plan could be completed in a lesser period of time, it is inconsistent with § 1325(b) and may not be confirmed.

DATED:   September 24, 2010                         /s/ Dennis R. Dow
                                                      HONORABLE DENNIS R. DOW
                                                      UNITED STATES BANKRUPTCY JUDGE

Copies to:
Richard Fink
Charles F. Johnson